# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN E. GROTHER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-3279 |
| | § | |
| UNION PACIFIC RAILROAD | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

John Grother sued his employer, the Union Pacific Railroad Company, alleging discrimination based on age and retaliation for a December 15, 2002 complaint about a supervisor's use of a discriminatory term (unrelated to age). Grother asserted violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and the Age Discrimination Enforcement Act (ADEA), 29 U.S.C. §§ 621, *et seq.* In his complaint, Grother alleges that the retaliation consisted of unfair performance evaluations, denial of bonuses, low pay raises, assignment to a night shift, denial of training and promotion. Grother alleges that the discrimination included denial of budget training and promotion. The only promotion denial Grother alleges in the complaint was his unsuccessful application in March 2003 for a posted senior management position. Grother alleges that this position was awarded to a younger, less qualified, man.

After discovery ended, Union Pacific moved for summary judgment on both the discrimination and retaliation claims. (Docket Entry No. 17). Grother responded. (Docket

Entry No. 24).   Union Pacific replied, (Docket Entry No. 26), and Grother surreplied. (Docket Entry No. 28).  On the basis of the pleadings, the motion, responses, and replies, the record, and the applicable law, this court grants Union Pacific's motion for summary judgment and, by separate order, enters final judgment.  The reasons are explained below.

## I.   Background

Grother was born in 1946.  He was hired by the Southern Pacific Transportation Company in 1969, after he finished an MBA program.  In 1996, while Grother was working as a terminal superintendent in Tucson, Arizona, Southern Pacific merged with Union Pacific.  Union Pacific asserts and provides summary judgment evidence that Grother was at risk for losing his job as a result of the merger.  (Docket Entry No. 17, Ex. 3, Bishop Affid. at 2).  Charles Bishop, then the Regional  Director, Southern Region, Intermodal/Premium Operations, arranged for Grother to continue to work for the railroad by moving him to the position of Manager of Intermodal Operations in Houston "in order to save his job."  (*Id.*). Grother does not dispute the reason for his job transfer, but notes that it was a demotion from his former position.  On July 1, 1997, Grother began working in his new position.  His direct supervisor was Don Fryar.  Bishop was approximately two years younger than Grother; Fryar was older.

The parties offer different accounts of Grother's experience working under Fryar's supervision.  Grother alleges in the complaint that from 1997, when he began working in Houston, to November 2002 –   when Grother took medical leave and Fryar left in

anticipation of retirement – Fryar referred to Grother as a "Nazi" on a weekly basis, a disparaging reference to German ancestry. Grother claims to have repeatedly asked Fryar to stop, without success. Grother does not allege national origin discrimination or a hostile work environment in this lawsuit.

On November 7, 2002, Fryar notified Grother by e-mail of a scheduling change that would require Grother to work evening shifts for a period. (Docket Entry No. 17, Ex. 11A). Grother replied on November 13, 2002, asking whether the scheduling change would affect his ability to receive training on the budget. (Docket Entry No. 17, Ex. 11B). Grother testified in his deposition that when he complained to Fryar about "being left on nights without budget training," Fryar responded by saying that Grother was "too old to be trained on the budget." (Docket Entry 17, Grother Deposition, Ex. 2, p. 133).

Grother began a medical leave in November 2002. Grother alleges in his complaint and testified in his deposition that on December 15, 2002, while on leave, he sent a 22-page letter to the Union Pacific Ombudsman. The letter contained a lengthy recitation of Grother's disappointments and complaints about his job. It included a complaint about Fryar's derogatory references to him as a "Nazi." Grother asserts that he did not complain about this treatment from Fryar earlier because he had a sick wife and wanted to wait until he was 55 and certain retirement benefits vested. (Docket Entry No. 24, Ex. 4). Grother testified that in 2001, after he complained to Fryar about the use of the term "Nazi," the result was the loss of a bonus. (Docket Entry No. 17, Ex. 2, Grother Depo., p. 80). Grother did not

allege this incident in his EEOC complaint or in the complaint filed in this lawsuit.  Grother

acknowledged that he did not complain to anyone about Fryar until December 2002.

Union Pacific presents summary judgment evidence that from 1997 to the end of

2002, Grother had problems in his job performance.  In his affidavit, Bishop stated as

follows:

> After Mr. Grother relocated to Houston, I perceived that Mr.
> Grother had some difficulties at Settgast in interacting with the
> yardmasters, who were train service employees.  Mr. Grother
> subsequently was transferred to the Englewood Intermodal
> facility in Houston, which also was located in a rail yard and
> which is staffed seven days a week, twenty-four hours a day.  I
> perceived after the move to Englewood that, although Mr.
> Grother's learning of the Intermodal business was slow, he was
> making some progress.  I learned that Mr. Fryar had concerns
> that Mr. Grother was not availing himself of learning everything
> that there was to learn, such as the gate operations, the handheld
> work or the OASIS work, all of which were necessary skills to
> perform the MIO job, and that Mr. Grother was not spending
> enough time outside at the facility working and observing what
> was occurring in the operation.

(Docket Entry 17, Bishop Affid. at 2–3).

Fryar retired in December 2002.  Before he left, he provided information about

Grother's work that Bishop used in the formal 2002 performance evaluation he issued on

January 2, 2003.  Fryar rated Grother's 2002 performance as a "4," which is "below

expectations."  Bishop described how he completed the performance evaluation:

> I completed Mr. Grother's 2002 performance review document
> because Mr. Fryar failed to complete it before he left the
> workplace.  Mr. Fryar did, however, rate Mr. Grother and other
> employees working for him before he left, and he had rated Mr.

4

Grother's 2002 performance as a "4", which is below expectations, and communicated that information to me.  In completing the performance review document on January 2, 2003, I used input from Mr. Fryar, as well as my own knowledge of Mr. Grother's performance and background. According to Mr. Fryar, Mr. Grother needed his Intermodal knowledge to be enhanced, still needed to get out of the office, get out on the ramp, learn more about the contractor side of the business, and also had issues regarding gate operations.  One of the other areas of concern to Mr. Fryar and myself was Mr. Grother's apparent lack of ability to perform his budgeting responsibilities, and I have personally witnessed Mr. Fryar giving Mr. Grother training on the budget.

(*Id.* at 3).

Bishop gave Grother a "4" in the performance rating.  In the evaluation, Bishop wrote:

Mr. Grother has held Key Positions in his career and has proven he can achieve results and be a valuable team member.  He has had more training than any other Manager in Houston Premium Operations when it comes to Leadership and Management along with Quality.  I look to see Mr. Grother as a key member of the Team and Leader and not one that will sit by and become passive when it comes to the Operations overall.  Not just the switching and loan plans.  But to know each and every facit [sic] of the business.  In six years of Intermodal experience [Grother] has voiced that he has not been given proper training.  I feel that in six years observation and practice alone would teach someone the Budget Process, especially someone with finance experience . . . He does have a basic knowledge.  Understandably he came in with a huge learning curve when Intermodal Operations was concerned.  But he was proficient in Efficiency Testing and all associated area of switching and Operating principles.  He only needs to apply himself.

(Docket Entry No. 17, Ex. 3-A).  The final review stated that Grother needed to improve his:

(1) "ability to forecast and accrue [the budget]"; (2) "Gate house and Ramp Knowledge and

5

business as a whole"; and (3) "Accountability, [Grother needs to] accept the fact one has to see the job through and follow up is key to success."  (Docket Entry No. 17, Bishop Affid. at 3).  Bishop told Grother that with work, he could improve his overall rating to a level 3 rating, which "meets expectations."  (*Id.* at 4).

Grother alleges that this negative performance evaluation resulted from age discrimination by Fryar and Bishop and from retaliation for the December 15, 2002 complaint he sent to the Ombudsman about Fryar's use of the word "Nazi."  Union Pacific denies that Bishop and Fryar even knew that the complaint had been sent when they did the performance evaluation.  Union Pacific points out that Fryar had stopped working in anticipation of retirement before Grother sent the complaint.  Union Pacific submits summary judgment evidence in the form of Bishop's affidavit that the ombudsman did not forward the section of the letter complaining of Fryar's use of the term "Nazi" until later.  Bishop stated that he did not even know about Grother's December 15, 2002 letter to the ombudsman until after he had completed the written performance evaluation that issued on January 2, 2003. (*Id.*).

Grother asserts that as a result of the poor performance evaluation, he received a merit increase that was only half the average increase – $1,200 rather than $2,400 – and did not receive a bonus, which he estimated would have been approximately $3,500. (Docket Entry No. 17, Ex. 2, Grother Depo., p. 165).  Grother also testified that the poor performance

evaluation made him "nonpromotable and out of the running for the senior MITO job." (*Id.*, p. 80).

Grother returned to work from his medical leave in February 2003.  On March 3, 2003 Grother applied for Fryar's vacated position, the senior MITO job.  The posting for the position listed numerous qualifications, including a bachelor's degree.  (Docket Entry No. 24, Ex. 1 at 2).   After reviewing multiple applicants, Bishop recommended to senior management that George Davis fill the vacancy.  Bishop gave the following reasons for the recommendation:

> I did not perceive Mr. Grother as qualified for the promotion. After reviewing the qualifications of all the applicants, I recommended George Davis as the most qualified candidate for the position, and my recommendation was accepted by senior management of the Railroad.  I viewed Mr. Davis as most qualified for the promotion because of his extensive experience, both at Union Pacific Motor Freight, a Railroad subsidiary, and later at the Railroad, in the Intermodal arena.  Mr. Davis had started out working on the ground, out on the ramp, had been a load-out clerk, and had worked gate functions, so he knew the processes associated with loading and unloading firsthand.  He could continue the work without computer help if necessary.  He was a well-rounded Intermodal individual, and also had experience in train service.  In my assessment, he could do it all in terms of experience.   Additionally, Mr. Davis had demonstrated good management and people skills.  In contrast, Mr. Grother lacked overall ramp and Intermodal experience and knowledge, and did not have management and people skills comparable to those possessed by Mr. Davis.

(Docket Entry 17, Bishop Affid. at 5).

Grother asserts that Davis was younger, less experienced, and did not have a bachelor's degree, while Grother had both a bachelor's and a master's degree. (Docket Entry No. 24 at 8). In his deposition, Bishop explained that he had thought the bachelor's degree was preferred, but not required, for the senior MITO position. The rewritten job posting identified the bachelor's degree as a qualification, in the same category as "computer skills," "problem solving," and "presentation skills." Based on Bishop's recommendation, senior management appointed Davis to the vacancy. Grother testified that he believed he was a better choice for the senior MITO position than Davis because "the place runs well" when Davis is on vacation and Davis has sought Grother's advice on occasion. (Docket Entry No. 17, Ex. 2, Grother Depo., p. 162).

The senior MITO position that Grother applied for in March 2003 is the only unsuccessful promotion application that Grother identified in either his EEOC filing of May 12, 2003, or the complaint he filed in this lawsuit in August 2004. In a January 2006 declaration, Grother stated that over the past three years, he has applied for 113 different positions within Union Pacific, without success. He asserted that many were filled by individuals "several years younger." (Docket Entry No. 24, Ex. 4, Grother Declaration, p. 1). Grother submitted a list of the positions for which he had applied from June 2005 to January 2006. During this period, neither Fryar nor Bishop had any involvement in promotion or other decisions affecting Grother; Fryar had retired and Bishop was promoted

to Superintendent of Premium Operations effective February 15, 2005 and transferred to Chicago.

In addition to filing the EEOC complaint alleging age discrimination and retaliation in May 2003, Grother filed a complaint with the Department of Labor Federal Contract Compliance Programs Office in June 2003 alleging discrimination on the basis of his status as a Vietnam Veteran.  In this complaint, he alleged that his lack of budget training and his transfer to the night shift in 2002 and his failure to receive the senior MITO position in 2003 resulted from discrimination against him because of his veteran status.  A formal investigation resulted in a finding of "no evidence" to indicate any discrimination based on his veteran status.

## II.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  "An issue is

material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002); *Anderson*, 477 U.S. at 255. "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

10

### III.  The Age Discrimination Claim

#### A.  The Legal Standard

Under the Age Discrimination in Employment Act, it is unlawful for an employer to "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1); *see Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Rachid v. Jack in the Box, Inc*., 376 F.3d 305, 308-09 (5th Cir.2004).  The ADEA makes it unlawful for an employee, who is at least 40 years old, to be subjected to an adverse employment action because of the employee's age.  *See Rutland v. Moore*, 54 F.3d 226, 228 (5th Cir.1995) (citing 29 U.S.C. §§ 623(a), 631(a)).  As with other types of employment discrimination, age discrimination may be demonstrated either through direct evidence or by an indirect method of proof.  *See Rachid*, 376 F.3d at 309 (ADEA); *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (Title VII); *Sandstad v. CB Richard Ellis*, 309 F.3d 893, 896 (5th Cir. 2002) (ADEA); *see also Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000) ("The same evidentiary procedure for allocating burdens of production and proof applies to discrimination claims under both [Title VII and the ADEA].").  "A plaintiff who can offer sufficient direct evidence of intentional discrimination should prevail, just as in any other civil case where a plaintiff meets his burden." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996).  "However, because direct evidence of discrimination is rare, the

Supreme Court has devised an evidentiary procedure that allocates the burden of production and establishes an orderly presentation of proof in discrimination cases." *Id.*; *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993). "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *see Laxton*, 333 F.3d at 578; *Sandstad*, 309 F.3d at 896.

If a plaintiff provides direct evidence of discrimination, "the *McDonnell Douglas* test is inapplicable." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 104 S.Ct. 613, 83 L.Ed.2d 523 (1985); *see also Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). If there is no direct evidence of discrimination, the plaintiff must initially establish a prima facie case by satisfying a multi-factor test from which a discriminatory motive may be inferred, creating a rebuttable presumption of intentional discrimination. *See Reeves*, 530 U.S. at 142; *Sandstad*, 309 F.3d at 896. "'To establish a prima facie case, a plaintiff need only make a very minimal showing.'" *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (*quoting Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)).

If the plaintiff establishes a prima facie case of discrimination, the defendant must "articulate a legitimate, non-discriminatory reason for its decision." *Rachid*, 376 F.3d at 312.

"This burden is one of production, not persuasion; it 'can involve no credibility assessment.'"

*Reeves*, 530 U.S. at 142 (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113

S.Ct. 2742, 125 L.Ed.2d 407 (1993)); *see Sandstad,* 309 F.3d at 898.  If the defendant

satisfies this limited burden, "the plaintiff must then offer sufficient evidence to create a

genuine issue of material fact either (1) that the defendant's reason is not true, but is instead

a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true,

is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's

protected characteristic (mixed-motive[s] alternative)."  *Rachid*, 376 F.3d at 312 (internal

quotations and citations omitted).  If the plaintiff presents evidence that age was a motivating

factor in the decision, the defendant must prove that it would have made the same decision

regardless of any discriminatory motive.  *Id.*

### B.    Analysis

Grother does not contend that he has direct evidence of discrimination on the basis of

his age.  He does, however, identify one comment by Fryar, his direct supervisor from 1997

to 2002, responding to Grother's question about budget training when he was assigned to the

night shift.  Fryar allegedly stated, "you are too old to be trained on the budget."  This

comment, made on November 14, 2002, is not direct evidence of age discrimination as

defined in this Circuit.

Direct evidence is  "'any statement or written document showing a discriminatory

motive on its face.'"  *Fierros v. Tex. Dept. of Health*, 274 F.3d 187, 195 (5th Cir.2001)

(*quoting Portis v. First Nat'l Bank*, 34 F.3d 325, 329 (5th Cir.1994)).  For a remark to be probative of discriminatory intent, it must be "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the [adverse employment action]."  *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir.1996) (*citing Bodenheimer v. PPG Industries Inc.*, 5 F.3d 955, 958 (5th Cir.1993)). If an inference is required for the evidence to be probative on an employer's discriminatory animus, the evidence is circumstantial, not direct.  *Sanstad*, 309 F.3d at 897–98.  Statements that merely suggest discriminatory motive are not  direct evidence of discrimination.  *See Haas v. ADVO Sys., Inc.*, 168 F.3d 732, 733-34 (5th Cir. 1999) (holding that a job interviewer's statement that the plaintiff's age caused him concern was not direct evidence of discrimination in the employer's decision not to hire the plaintiff); *Tex. Instruments, Inc.*, 100 F.3d at 1181 (holding that statements to a discharged worker that it was time to "make room for the younger supervisors" was not direct evidence of discrimination); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1218 (5th Cir. 1995) (holding that supervisor's statements about replacing employee with "someone younger and cheaper," that "it must [have] been your age," and that company was "going to get rid of the older employees with the higher salaries," were not direct evidence of age discrimination); *Martin v. Bayland, Inc.*, 403 F. Supp.2d 578, 582–83 (S.D. Tex. 2005) (finding that employer's statement to plaintiff that "it was time to retire" is not direct evidence of age discrimination).  Fryar's statement is not direct evidence of discriminatory intent. The familiar burden-shifting analysis applies.

Grother asserts that the acts of discrimination included unfairly low performance evaluations, denial of bonuses, lower pay raises, frequent assignment to night shifts, denial of training, and denial of promotion.  Although Union Pacific argues that some of these employment actions do not amount to "ultimate employment decisions," the issue in a discrimination case is whether a "tangible employment action" occurred.  In *Dollis v. Rubin*, 77 F.3d 777 (5th Cir. 1995), a retaliation case, the Fifth Circuit held that an employer's refusal to allow a certain employee to attend training sessions did not effect a material adverse change in the terms or conditions of the plaintiff's employment and was not an ultimate employment decision.  *Id.* at 779, 782.  In *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997), the court held that the import of the *Dollis* case is that Title VII's antiretaliation provision refers to ultimate employment decisions.  The discrimination provision of Title VII is "much broader," reaching activity that would "tend to" adversely affect the employee.  Even under this standard, however, the challenged employment actions must "tend to affect" employment status or benefits by resulting in a change of employment status, benefits, or responsibilities.  A denial of training peripheral to an employee's major job duties is not an adverse employment action covered by Title VII.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742; 118 S. Ct. 2257, 2268, 151 L. Ed.2d 633 (1998) (noting, in a sexual harassment case, that "a tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in

benefits."). Grother's assertions that Fryar and Bishop unfairly evaluated him in early 2003, resulting in the denial of a bonus and a lower raise than he expected, and that he was denied promotion to the senior MITO position available after Fryar retired, allege tangible employment actions.

To establish a prima facie case of age discrimination based on a failure to promote, a plaintiff is required to prove that: (1) he is within the protected class; (2) he was qualified for the position; (3) his application for promotion was rejected; and (4) another applicant outside the protected class was hired. *See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680–81 (5th Cir. 2001); *see also Lindsey v. Prive Corp.*, 987 F.2d 324, 326–27 (5th Cir. 1993); *Moody v. U.S. Secretary of Army*, 72 Fed. Appx. 235, 238 (5th Cir. 2003). "Under the ADEA, the protected class is limited to persons at least 40 years of age or older." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 n. 22 (5th Cir. 2005) (citing 29 U.S.C. § 631(a)). The Supreme Court has stated that the ADEA prohibits age discrimination even among persons within the protected group. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

Grother was a member of the ADEA-protected class. Union Pacific does dispute that Grother was qualified for the senior MITO Position, and Grother himself states that because he had a "below expectations" performance evaluation in 2002, he was not qualified for promotion to the senior MITO position in early 2003. Union Pacific does not assert this as a basis for the selection of Davis over Grother for the position, however. It is uncontested

that Union Pacific did not hire Grother for the position.  Davis, an applicant outside the protected class, was promoted to the senior MITO position that Grother sought.

Union Pacific met its burden to articulate a legitimate nondiscriminatory explanation for its evaluation and promotion decisions.  *See Rachid*, 376 F.3d at 312.  Bishop explained in detail why both he and Fryar faulted aspects of Grother's job performance.  Bishop also explained why he concluded that Davis was the better-qualified candidate for the senior MITO position.  Selecting the better of two qualified applicants is a legitimate, nondiscriminatory explanation for a promotion decision.  *See Price v. Fed. Express Corp.*, 283 F.3d 715, 721 n. 2 (5th Cir. 2002) (*citing Jefferies v. Harris County Cmty. Action Ass'n.*, 693 F.2d 589, 590 (5th Cir. 1982)).[1]

Grother must raise a fact issue as to whether Union Pacific's proffered explanation is untrue or otherwise is a pretext for discrimination.  *See Reeves*, 530 U.S. at 140; *Rachid,* 376 F.3d at 312.  A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." *Reeves*, 530 U.S. at 143; *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).  An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action.  *See Sandstad*, 309 F.3d at 899.  Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the

---

[1]  Grother alleges that Davis was not, in fact, qualified, and that after the promotion denial identified in his EEOC complaint and in the only complaint filed in this suit, he unsuccessfully sought more than 100 other positions.  Both arguments are addressed below.

plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of the defendant's true motive. *Id.* at 897; *Russell*, 235 F.3d at 223. No further evidence of discriminatory animus is required because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation. . . ." *Reeves*, 530 U.S. at 147–48. A showing of pretext may be insufficient to establish discrimination when: (1) the record conclusively reveals some other, nondiscriminatory reason for the employer's decision; or (2) the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred. *See Russell*, 235 F.3d at 223 (citing *Reeves*, 530 U.S. at 148); *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000). Grother could also avoid summary judgment under the "mixed-motive alternative" by showing that his age was one of two or more "motivating factors" for the unfavorable evaluation and the promotion denial, which would place the burden on Union Pacific to show that it would have reached the same result regardless of Grother's age. *See Rachid*, 376 F.3d at 312.

With respect to Fryar's decision to assign Grother to the night shift in late 2002, which had the effect of making it harder for him to get budget training, and Bishop's performance evaluation issued on January 2, 2003, Grother has not controverted the reasons proffered for those employment actions. Grother has not disputed that night-shift assignments were rotated among personnel. Nor has he disputed that he was deficient in the areas cited in the

performance evaluation.  Bishop noted in his affidavit that Grother needed "his Intermodal knowledge to be enhanced, still needed to get out of the office, get out on the ramp, learn more about the contractor side of the business, and also had issues regarding gate operations."  (Docket Entry 17, Bishop Affid. at 3).  Grother has argued that he did not receive training in the budget, but the evaluation was not limited to that area, and Bishop explained why he believed Grother should have been able to learn the necessary information without the additional training he sought.

Fryar's comment in November 2002 that Grother was "too old to train on the budget" does not in itself raise a fact issue as to whether the reasons for the negative evaluation were false or whether age discrimination as a motivating factor in the evaluation.  Nor does it raise a fact issue as to whether age discrimination was the basis for Fryar's decision to assign Grother to the night shift, which had the effect to making it hard for him to obtain budget training.[2]  Fryar was one of the two decisionmakers involved in the 2002 evaluation, and the

---

[2] Since *Reeves*, the Fifth Circuit has varied its approach for determining when "remarks" in the workplace are probative of discrimination.  Some decisions analyze the probative value of age-related remarks according to the extent to which they satisfy the following criteria: the remarks (1) were related to the protected class of persons of which the plaintiff is a member; (2) were proximate in time to the employment decision at issue; (3) were made by an individual with authority over the employment decision at issue; and (4) were related to the employment decision at issue.  *See, e.g., Patel v. Midland Mem'l Hosp. and Med. Ctr.*, 298 F.3d 333, 343–44 (5th Cir. 2002) (citing *Brown*, 82 F.3d at 655); *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (same); *Wallace*, 271 F.3d at 222 (same).  Other Fifth Circuit cases state that the appropriately "cautious" post-*Reeves* test is that age-related statements can constitute evidence of discrimination even when they are not in the direct context of the termination and even if made by one other than the formal decisionmaker, as long as the speaker is in a position to influence the decision.  *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003); *Laxton v. Gap, Inc.*, 333 F.3d 572, 583 (5th Cir. 2003); *Sandstad*, 309 F.3d at 899.

statement attributed to him was close to that evaluation.  But the only evidence of age discrimination in the record is this single comment by Fryar that Grother was "too old" for budget training.  "[S]o long as remarks are not the only evidence of pretext, they are probative of discriminatory intent."  *Palasota*, 342 F.3d at 577.  Grother presents evidence that Fryar made frequent comments that were disparaging of Grother's German ancestry, and that Grother believed that Fryar was biased against him as a Vietnam veteran, but the record shows no evidence of Fryar's alleged age bias beyond this single remark.

With respect to the 2003 promotion that Grother sought and Davis received, the record does show that Grother had a bachelor's degree and a master's degree; that Davis had neither; and that the job posting listed a bachelor's degree as a qualification.  Grother can create a fact issue by providing evidence that he was "clearly better qualified" than Davis for the position.  *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 356–57 (5th Cir. 2001); *Manning v. Chevron Chem. Corp.*, 332 F.3d 874, 882 (5th Cir. 2003) (internal citations omitted); *see also Reynolds v. Rumsfeld*, 127 Fed. Appx. 154, 155 (5th Cir. 2005).  "However, the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"  *Celestine*, 266 F.3d at 357 (*quoting Deines v. Tex. Dept. of Prot. & Regulatory Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999)).

In a recent opinion, the Supreme Court recognized that evidence of superior qualifications may establish pretext "in some circumstances." The court noted that several circuits find an inference of pretext only if "the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face." *Ash v. Tyson Foods, Inc.*, --- U.S. ----, ---- - ----, 126 S.Ct. 1195, 1197–98, --- L.Ed.2d ----, ---- - ---- (2006) (per curiam). The Court rejected this standard, but declined to "define more precisely what standard should govern pretext claims based on superior qualifications." *Id.* at 1198. The "clearly better qualified" standard set forth by the Fifth Circuit is not similar to the standard the Court found faulty in *Ash* and remains binding on this court. *See, e.g., Celestine*, 266 F.3d at 357; *Manning*, 332 F.3d at 882. Courts are not to engage in the practice of second-guessing employment decisions involving disputes concerning which promotion candidate is more qualified. *See Scott v. Univ. of Miss.*, 148 F.3d 493, 509 (5th Cir. 1998) (*citing Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988)).

Union Pacific has presented competent summary judgment evidence of Bishop's reasons for recommending Davis for the senior MITO position. As noted, Davis had much more extensive experience than Grother in the intermodal area and had demonstrated management and personnel skills. Grother, by contrast, had limited ramp and intermodal experience. His management skills and his skills in dealing with people in the train yards had been found lacking. (Docket Entry No. 17, Ex. 3-A).

Grother argues that Davis was not qualified because he lacked a bachelor's degree, which the job posting identified as a qualification.  The section of the posting that lists a bachelor's degree also lists such relatively imprecise criteria as computer skills, total quality management, problem solving, and presentation skills.  Bishop testified that he understood the bachelor's degree to be a preferred criteria rather than a required qualification.  (Docket Entry No. 24, Ex. 4, p. 42).

In this case, although Grother had more formal education than Davis, and Davis lacked a bachelor's degree, it is undisputed that Davis had superior experience in intermodal work.  Davis had "extensive experience . . . in the Intermodal Arena . . . . [and] could operate the Intermodal facility with or without computer help."  (Docket Entry No. 17, Ex. 3, Bishop Affid. at 5).  "In contrast, Grother lacked overall ramp and Intermodal experience and knowledge, and did not have management and people skills comparable to those possessed by Davis."  (*Id.*)  In addition to the deficiencies in Grother's experience, he had a recent evaluation that rated his performance unfavorably.  The record fails to raise a genuine fact issue that Grother was "clearly" more qualified than Davis, when all the factors for the promotion are considered.  Grother identifies no factor that would make Davis less qualified except that Davis lacked a bachelor's degree.  Grother has not raised a genuine dispute of material fact that he was "clearly better qualified" such that "no reasonable person, in the exercise of impartial judgment," could have chosen Davis over Grother for the senior MITO position.  *See Celestine*, 266 F.3d at 357.  This court may not substitute its own judgment for

22

that of "the employer in evaluating what types of experience are most valuable for an employee in the absence of proof that the standards were not consistently applied or were so irrational or idiosyncratic as to suggest a cover-up." *See EEOC v. La. Office of Comm'n Serv.*, 47 F.3d 1438, 1445–46 (5th Cir. 1995) (internal citations omitted).  Deference to the employer's decisions is appropriate because the ADEA does not protect "older workers from erroneous, or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated."  *See Bienkowski*, 851 F.2d at 1508.  Grother does not raise a fact issue as to pretext or whether age was a motivating factor in the employment decision through his contention that he was more qualified than Davis for the senior MITO position.

In his declaration, Grother asserts that he unsuccessfully sought an additional 113 positions after March 2003.  Union Pacific challenges his ability to include them in this suit, given his failure to raise any of them in the EEOC complaint or in the complaint he filed in this case.  Reading the complaint makes it clear that Grother only alleged a single, definite failure to promote – the March 2003 promotion to the senior MITO position – and no other. But, as the Supreme Court has recently emphasized, there are no special pleading rules for civil rights cases.  *See Swierkiewicz v. Sorema*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).  The federal rules (with irrelevant exceptions) require only that a "plaintiff's complaint provide a short and plain statement articulating the reasons supporting the plaintiff's belief that he 'is entitled to relief.'"  *Jenkins v. De La Paz*, 124 Fed. Appx. 265, 268 (5th Cir. 2005) (quoting FED. R. CIV. P. 8(a)).  "Additionally, to comport with Rule

8(a), the complaint must simply either: '(1) provide notice of the circumstances which give rise to the claim or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist.'" *Id.* (citing *General Star Indem. Co. v. Vesta Fire Ins. Co.,* 173 F.3d 946, 951 (5th Cir. 1999). "[A] plaintiff need not plead specific facts required to establish [a] Title VII claim under *McDonell Douglas Corp. v. Green*." *Hancock v. Caldera*, 57 Fed. Appx. 210 (5th Cir. 2002) (internal citations omitted).

Even considering these additional promotion denials, however, Grother does not raise a fact issue as to either pretext for age discrimination or age as a motivating factor. It is uncontroverted that neither Bishop nor Fryar played a role in deciding any of the specific job applications that Grother identifies. Grother does not assert that any other individual at Union Pacific bore him age-based animus. The record is devoid of evidence that Grother was qualified for the positions he applied for or that they consistently went to younger employees who were more qualified than he was. There is no evidence as to who applied, what their relative qualifications were, who was promoted, and who was not promoted.

Grother asserts that he was unable to present such evidence because Union Pacific objected to discovery requests intended to obtain some of the information. Grother, however, did not challenge that objection, seek to obtain more information, or move for a continuance for that purpose under Rule 56(f). The fact that Grother limited the only complaint filed in this lawsuit to a single promotion denial limited Union Pacific's discovery obligation. Rule 26 requires discovery responses relevant to a party's claims and defenses set out in the

pleadings.  *See* FED. R. CIV. P. 26(b)(1).  Grother's sparse complaint circumscribed the scope of relevant discovery.  The record is insufficient to support any inference that younger employees similarly situated to Grother were promoted over him.  This court grants summary judgment on Grother's age discrimination claims.

## IV.    Title VII Retaliation

### A.    The Legal Standard

Under Title VII, it is unlawful for any employer "to discriminate against any of his employees or applicants for employment . . . because [the employee] has opposed any practice made an unlawful employment practice . . . or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. §§ 2000e-3(a)(1988).  A plaintiff establishes a prima facie case of unlawful retaliation by showing that: (1) he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action.  *See Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002) (citing *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001)); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996); *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983).  An employee has engaged in activity protected by Title VII if he has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or

25

participated in any manner in an investigation, proceeding, or hearing" under Title VII. *Long,* 88 F.3d at 304–05.

Under the *McDonnell Douglas* framework, once the plaintiff makes a prima facie showing, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If the employer produces such evidence, then the plaintiff has the burden of proving that the Title VII protected activity "was a 'but for' cause of the adverse employment decision." *Id.* at 305 n. 4.

### B.   Analysis

The only protected activity Grother identifies is his December 15, 2002 letter to the Union Pacific Ombudsman. The only retaliatory actions Grother identifies after that date are the January 2, 2003 performance evaluation that cost him a bonus and reduced his merit increase, and the promotion denials. Although Grother alleges that Fryar and Bishop retaliated against him for the December 15, 2002 complaint by giving him a negative assessment on his performance review, assigning him to the night shift, and denying him budget training, these actions are not adverse employment actions that can give rise to a retaliation claim. "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis v. Rubin*, 77 F.3d 777, 781–82 (5th Cir. 1995). "Ultimate employment decisions" include acts "such as hiring, granting leave, discharging, promoting, and compensating." *Id.* at 782. The performance review itself, night shift

assignments, and denial of training are not ultimate employment decisions. *Cardenas-Garcia v. Texas Tech Univ.*, 118 Fed. Appx. 793, 794 ("Performance reviews and investigations, therefore, do not qualify as ultimate employment actions."); *Dollis*, 77 F.3d at 782 (holding that employer's refusal to provide employee with training does not constitute ultimate employment action).

As noted, Union Pacific has presented legitimate, nondiscriminatory reasons for the evaluation – considered because it resulted in a loss of bonus and a reduced increase – and for promoting Davis rather than Grother, and the record does not raise a fact issue as to whether retaliation was the reason for these actions. In addition to the absence of evidence controverting the proffered reasons for the evaluation, the record shows that when Fryar evaluated Grother in late 2002 and Bishop finished the evaluation before January 2, 2003, they did not know of Grother's complaint to the ombudsman. "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Ackel v. National Communications, Inc.*, 339 F.3d 376, 386 (5th Cir. 2003) (quoting *Chaney v. new Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999)). The facts that Davis did not possess a bachelor's degree, Davis would ask Grother for advice, and that while Davis was on vacation, the "place runs just fine," (Docket Entry No. 17, Grother Declaration, p. 162), do not raise a fact issue as to pretext. The record does not contain evidence that Grother was so clearly better qualified than Davis that no reasonable person,

in the exercise of impartial judgment, could have chosen Davis over him. *Manning*, 332 F.3d at 882. Union Pacific's motion for summary judgment is granted with respect to the Title VII retaliation claim regarding the evaluation and denial of promotion to the senior MITO position.

With respect to the claim that Grother was denied over 100 other promotions, there is no evidence as to any causal link to Grother's 2002 complaint. The target of the complaint – Fryar – left the workplace before the complaint issued. Bishop, the only other allegedly biased decisionmaker identified, left Houston for a different position. There is no evidence as to whether Grother was qualified for the positions he sought or even whether they were promotions as opposed to lateral transfers. Grother has not made a prima facie showing of retaliation with respect to the promotion denials he was allegedly denied after March 2003.

Summary judgment is granted as to the retaliation claims.

## IV.   Conclusion

Union Pacific's motion for summary judgment is granted. Final judgment will be entered by separate order.

SIGNED on June 9, 2006, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge

28