IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN E. GROTHER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-3279 |
| | § | |
| UNION PACIFIC RAILROAD | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Plaintiff John E. Grother timely moved for reconsideration under Rule 59(e) of the

Federal Rules of Civil Procedure of this court's grant of summary judgment in favor of

defendant Union Pacific Railroad Company. (Docket Entry No. 32). Union Pacific has

responded, (Docket Entry No. 34), and Grother has replied, (Docket Entry No. 35). Based

on a careful review of the parties' submissions, the record, and the applicable law, this court

denies Grother's motion for reconsideration, for the reasons stated below.

## I.     Background

This court's June 9, 2006 memorandum and opinion provides a detailed account of

the facts of this case, which is only summarized here. Grother began working for Union

Pacific's predecessor, Southern Pacific Transportation Company, in 1969. In August 2004,

Grother sued Union Pacific alleging discrimination based on age and on retaliation for a

complaint Grother made about a supervisor's references to him as a "Nazi." In the suit,

Grother alleged that in early November 2002, his supervisor, Don Fryar, notified him that

he would be working the night shift for a period.  When Grother questioned Fryar about how the schedule change might affect his opportunity to receive further training on budgetary matters, Fryar allegedly responded that Grother was "too old to be trained on the budget." Grother also alleged that his supervisors gave him a negative performance evaluation in January 2003 because of his age and in retaliation for a complaint he filed with the Union Pacific ombudsman.  On December 15, 2002, Grother had sent a detailed letter to the ombudsman complaining that Fryar called him a "Nazi" despite Grother's repeated requests that he stop.  Grother alleged that as a result of the negative evaluation, his annual merit increase for 2002 was approximately half the company average and he did not receive a bonus that year.  Grother also testified that the evaluation affected his opportunities for promotion.

Grother also claimed that in March 2003, he applied for a promotion to the position of senior manager of intermodal terminal operations (MITO).  Grother alleged that Bishop hired a younger and less experienced employee, George Davis, to fill that position.  Grother argued that Davis was less qualified because he did not have a bachelor's degree, while Grother had both a bachelor's and a master's degree.  Grother also testified that he was the more qualified candidate because Davis had sought Grother's advice on occasion, leading Grother to believe that Davis was incompetent in some areas of his job.

Grother also argued that Union Pacific continued to discriminate against him by denying him promotion for 113 jobs that he applied for after March 2003.  Grother did not

make this allegation until his response to Union Pacific's summary judgment motion. Grother attached to his response a printout of the jobs for which he applied and was rejected. He also submitted a declaration stating that he told the EEOC investigator of these actions, that he provided Union Pacific with similar information during discovery, and that he had been interviewed for three positions and each time felt the interviews were "perfunctory." Grother also submitted Union Pacific's discovery responses regarding these alleged promotion denials.

Union Pacific moved for summary judgment.  Union Pacific asserted that neither Fryar nor Charles Bishop, another of Grother's superiors at Union Pacific, knew of Grother's complaint to the ombudsman when the negative performance review was issued on January 2, 2003.  Fryar was no longer working at Union Pacific when Grother sent the complaint. Before Fryar left Union Pacific in December 2002 Fryar gave Grother a "below expectations" performance review for 2002.  Bishop stated that Fryar based the evaluation on Grother's performance and his repeated failure to develop skills needed for his position. Bishop received Fryar's evaluation of Grother and incorporated it into the final review that he issued on January 2, 2003.  Bishop testified that he had no knowledge of Grother's letter to the ombudsman until after the performance review issued.   Union Pacific also presented summary judgment evidence on Grother's failure to promote claim.  Bishop testified that he believed that a bachelor's degree was preferred for the senior MITO position but not required.  Bishop also testified that Davis was the most qualified candidate based on his

extensive experience in intermodal operations and his management skills.  By contrast, Grother lacked experience in important aspects of intermodal operations and had not shown himself to be as competent in management and interpersonal relations as Davis.  Grother did not refute this claim.

In its memorandum and opinion, this court granted summary judgment in favor of Union Pacific as to Grother's age-discrimination claims.  This court held that with respect to the decision to assign Grother to the night shift in November 2002 and the negative performance evaluation in January 2003, Grother did not meet his burden of proving that Union Pacific's proffered reasons were pretextual or that age was a motivating factor.  Grother did not dispute that the night-shift rotation was common among personnel, or that the reasons for the negative performance evaluation were not true.  The record did not show any evidence of age bias beyond Fryar's lone comment in November 2002.

This court also held that Grother had failed to show that age played a role in the decision to promote Davis to the senior MITO position.  This court found unpersuasive Grother's argument that his academic credentials made him "clearly more qualified" than Davis.  Grother also failed to show any evidence of age discrimination in the promotion decisions for the 113 jobs he applied for after March 2003.  There was no evidence that Grother was qualified for those positions, and no evidence that those jobs went to younger and less qualified candidates.

This court also granted summary judgment in favor of Union Pacific as to Grother's

retaliation claims.  This court held that the record did not raise a fact issue as to whether retaliation was the reason for the negative performance evaluation or for the senior MITO promotion decision.  Neither Bishop nor Fryar knew of Grother's complaint to the ombudsman when the evaluation was issued on January 2, 2003, and Grother failed to raise a fact issue as to pretext for the decision to hire Davis.  Similarly, Grother failed to show that there was any causal link between the 113 promotional decisions and Grother's complaint to the ombudsman.

## II.    The Motion for Reconsideration

### A.    The Legal Standard

A Rule 59(e) motion "calls into question the correctness of a judgment."  *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re TransTexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).  "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'"  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).  Relief is also appropriate when there has been an intervening change in the controlling law.  *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).  The Fifth Circuit warns that altering, amending, or reconsidering a judgment under Rule 59(e) is an extraordinary remedy that courts should use sparingly.  *Templet*, 367 F.3d at 479; *see also*

11 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2810.1, at 124 (2d ed. 1995).  Because granting a Rule 59(e) motion is such an extraordinary remedy, the Fifth Circuit has stated that the Rule 59(e) standard "favors denial of motions to alter or amend a judgment."  *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

   **B.    Analysis**

   Grother argues in his motion for reconsideration that the Supreme Court's recent decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 (2006), requires examination of his assignment to the night shift and denial of budget training as retaliatory employment actions.  He also argues that this court erred in not considering the 113 other positions for which Grother applied after he filed his EEOC complaint.  Grother further claims that the court erred in its analysis of whether Union Pacific discriminated on the basis of age when it promoted Davis to the senior MITO position in March 2003.  Grother argues that the court did not draw all reasonable inferences in his favor by not finding that Grother was clearly more qualified than Davis based on his academic credentials and by not finding discriminatory intent in Fryar's statement that Grother was "too old" to train on the budget.

   The Court in *Burlington Northern* clarified the standard for determining when an employer's actions can be retaliatory conduct under Title VII.  *Burlington Northern* changed the standard used in the Fifth Circuit, which had required an employee to show that the

6

alleged retaliation was an ultimate employment decision.  The Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co.*, 126 S. Ct. at 2415 (internal quotation marks omitted).  *Burlington Northern* did not change the framework used to analyze a retaliation claim.  A plaintiff still must make a *prima facie* showing that: (1) he engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action.  *Kebiro v. WalMart*, No. 06-40004, 2006 WL 2336438, at *2 (5th Cir. Aug. 10, 2006) (unpublished opinion) (noting that *Burlington Northern* altered the standard for determining whether an adverse employment action had occurred and applying the traditional burden-shifting analysis).  Under *McDonnell Douglas*, once the plaintiff makes a *prima facie* showing, the burden of production shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action.  *Long v. Eastfield College*, 88 F.3d 300, 304–05 (5th Cir. 1996).  If the employer produces such evidence, then the plaintiff has the burden of showing that the Title VII protected activity "was a 'but for' cause of the adverse employment decision."  *Id.* at 305 n.4.

Grother argues that *Burlington Northern* is an intervening change in controlling law requiring this court to reexamine the judgment.  He claims that *Burlington Northern* requires analysis of the retaliation claims based on the negative performance evaluation, assignment

to night shifts, and denial of training on budgetary matters.  *Burlington Northern* does not alter this court's analysis.   In the memorandum and opinion, this court did analyze the negative performance evaluation as an adverse employment action because it resulted in a loss of bonus and a reduced pay increase for 2002.  This court held that the record did not show a fact issue as to whether there was a causal link between the complaint to the Union Pacific ombudsman and the negative performance evaluation.  This court also found that Grother's proffered evidence did not raise a fact issue as to whether Union Pacific's reasons for issuing the negative performance evaluation were pretextual.  (Docket Entry No. 30 at 27).   Under the *McDonnell Douglas* framework, which remains the proper analysis after *Burlington Northern*, Grother did not raise a fact issue as to the negative performance evaluation that would preclude summary judgment.  *Burlington Northern* does not require reexamination of this analysis.

The evidence as to Grother's assignment to the night shift and denial of training opportunities does not require a different result, even though these decisions might have dissuaded a reasonable worker from making or supporting a charge of discrimination under *Burlington Northern*.  Grother complained to the ombudsman on December 15, 2002.  Fryar assigned Grother to the night shift on November 7, 2002.  Because Grother complained more than one month after the scheduling change, there is no evidence as to the causal link between the protected activity and the alleged retaliation.  Union Pacific also presented evidence that the scheduling change was routine and was intended to equalize assignments

for coworkers who were scheduled to cover Grother's impending medical leave. Grother does not dispute this evidence. He fails to raise a fact issue as to whether Union Pacific's proffered reasons are pretextual.

The record is also clear that the denial of training on budgetary matters was not in retaliation for Grother's December 15, 2002 complaint. Grother testified that Fryar told him on November 14, 2002 that he was "too old" to be trained on the budget. Fryar could not have retaliated against Grother in November 2002 for a complaint filed one month later. Grother fails to make a *prima facie* showing that there is a causal link between the denial of training opportunities in November 2002 and the complaint he made in December 2002. Before he left in late 2002, Fryar gave Bishop his 2002 evaluations of several Union Pacific employees including Grother, whom he gave a "below expectations" review. Bishop based the evaluation that issued in January 2003 on Fryar's review. Bishop stated that he had no knowledge of Grother's complaint when he issued the review, and that he would have expected someone with Grother's amount of experience to have acquired a certain level of knowledge concerning the budget, which Grother lacked. Grother fails to raise a disputed fact issue material to deciding whether Union Pacific's proffered reasons are pretextual.

Grother also argues that this court erred in not considering the 113 other positions for which he applied after he filed his EEOC complaint. Grother's reading of this court's memorandum and opinion is incorrect; the court did consider Grother's argument: "Even considering these additional promotion denials, however, Grother does not raise a fact issue

as to either pretext for age discrimination or age as a motivating factor." (Docket Entry No. 30 at 24). This court concluded that Grother had not presented or identified summary judgment evidence that would raise a fact issue as to whether age discrimination was a pretext or a mixed motive in Union Pacific's hiring and promotion decisions. Neither Fryar nor Bishop were in positions to make decisions about whether Grother would be selected for any of these positions. Grother did not allege, present evidence, or argue that anyone else at Union Pacific discriminated against him on the basis of his age or retaliated against him. This court also stated that Grother had failed to allege or identify evidence to show that he was qualified for the many positions he applied for or that the jobs went to younger, less qualified employees. Union Pacific had objected to Grother's discovery requests regarding these positions on the basis that such discovery was beyond the scope of the lawsuit. *See* FED. R. CIV. P. 26(b)(1). As this court already noted, Grother failed to object to Union Pacific's refusal or to seek the information in any other way.

In his motion to reconsider, Grother argues that he has documents he produced to Union Pacific during discovery that would show that he filed complaints with the EEOC about his unsuccessful candidacy for these positions. Under extraordinary circumstances, a court may entertain a motion for reconsideration in the light of additional evidence. *Templet*, 367 F.3d at 479. "However, 'an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration.'" *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 847–48

(5th Cir. 2006) (quoting *Templet*, 367 F.3d at 479).  The Fifth Circuit has articulated a nonexhaustive list of factors courts are to consider in determining whether to allow reconsideration of a summary judgment on the basis of new evidence:

> (1) [T]he reasons for the moving party's default, (2) the importance of the omitted evidence to the moving party's case, (3) whether the evidence was available to the movant before the nonmovant filed the summary judgment motion, and (4) the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened.

*Templet*, 367 F.3d at 482 (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990)).

Grother does not explain why he did not submit the EEOC documents in his summary judgment response.  He states only that the court has discretion to consider them now.  These documents, even if submitted, would not alter the outcome.  The fact that Grother complained to the EEOC that his denial was due to age-based animus would not raise a fact issue as to whether Union Pacific hired younger employees who were less qualified than Grother.

Grother also argues that the court erred in analyzing whether Union Pacific discriminated against Grother on the basis of his age when it promoted Davis to the senior MITO position in March 2003.  Grother argues that this court failed to draw all reasonable inferences in his favor by not finding pretext or mixed motive in Fryar's disparaging comment in November 2002 and that Grother had better academic credentials than Davis. This court carefully considered the evidence as to both Fryar's alleged comment and

Grother's academic credentials, taking the evidence in the light most favorable to Grother. The disparity in academic qualifications was not so great as to meet the "clearly better qualified" standard set by the Fifth Circuit given the reasons Bishop articulated for choosing Davis over the other candidates. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 356–57 (5th Cir. 2001). "[T]he bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Id.* at 357; *see also Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. Appx. 377, 383 (5th Cir. 2006). This court found that Bishop's decision was based on the fact that Davis had much more experience in the intermodal area and had shown greater adeptness at managing employees than Grother. Grother does not dispute Bishop's reasons. Grother does not argue that Davis was not qualified for the job, only that he was more qualified than Davis. This assertion fails to meet the "clearly better qualified" standard. *Celestine*, 266 F.3d at 357. This court concluded that Fryar's remark was the only evidence of age bias in the record. "[S]o long as remarks are not the only evidence of pretext, they are probative of discriminatory intent." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003).

**III.    Conclusion**

Grother's motion for reconsideration is denied.

SIGNED on October 23, 2006, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge